# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WINSTON GAILLARD, etc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 12-0228-WS-N |
| | ) |
| CITY OF SATSUMA, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiff's motion to exclude the testimony of defense experts Joey Parker and Ken Katsaris.[1] (Doc. 63). The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 69, 75), and the motion is ripe for resolution.

## BACKGROUND

As set forth in more detail in other orders, the plaintiff's decedent ("Jermaine") was killed when, as he and Hillary Baldwin were running from police officers after abandoning Baldwin's vehicle at the conclusion of a high-speed chase, he was struck by a vehicle driven by defendant Samuel Commins, an officer with the Satsuma Police Department. Officer Commins is the sole remaining defendant. The two surviving claims against him are a Section 1983 claim for use of excessive force in violation of the Fourth Amendment and a wrongful death claim under state law.

Parker is expected to testify for the defendant that Jermaine fell before being struck by the defendant's vehicle. (Doc. 69). As relevant here, Katsaris is expected to testify that: (1) the vehicle pursuit had ended before Jermaine was

---

[1] The plaintiff incorrectly identifies this witness as Ken Katasaris.

struck by the defendant's vehicle; (2) there is no evidence the defendant was experiencing an adrenaline effect; (3) there is no evidence of intentional force; and (4) the Satsuma Police Department's policies and procedures concerning vehicle pursuit and use of force complied with generally accepted law enforcement principles. (Doc. 69-3 at 3-4). The plaintiff asks that all these opinions be excluded on various grounds.[2]

## DISCUSSION

"Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The plaintiff requests a hearing on his motion. (Doc. 63 at 4; Doc. 69 at 6). Whether to conduct an evidentiary hearing is a decision committed to the Court's sound discretion. *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005). "As we have explained previously, *Daubert* hearings are not required, but may be helpful in complicated cases involving multiple expert witnesses." *Id*. (internal quotes omitted). For example, "[a] district court should conduct a

---

[2] The plaintiff has filed both a motion and a supporting brief. This practice is of itself unobjectionable, but the plaintiff has interspersed his arguments between the two documents, such that some arguments appear in one filing, some in the other. Worse, some arguments appear in both but are inconsistently worded. It is inappropriate for a party so to distribute its arguments, needlessly requiring detective work by the Court and the party's opponent. The plaintiff bears the resulting risk that an argument, or a non-identical iteration of an argument, will be overlooked.

2

*Daubert* inquiry when the opposing party's motion for a hearing is supported by conflicting medical literature and expert testimony." *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001). No comparable or analogous circumstances are present here, and the motion is sufficiently simple that a hearing would be of no assistance. Accordingly, the Court exercises its discretion against conducting such a hearing.

**I. Joey Parker.**

Parker concludes that Jermaine's center of gravity was well above the height of the front bumper of the defendant's vehicle. His opinion that Jermaine fell before being struck rests largely on the principle, drawn from a particular published paper addressing vehicle/pedestrian collisions, that a pedestrian whose center of gravity is above the height of the vehicle's bumper is likely to experience a "wrap trajectory," in which his upper body rotates toward the vehicle and impacts the hood, windshield or roof – none of which occurred in this case.

The plaintiff argues that Parker's methodology is flawed, and his opinions are therefore unreliable under *Daubert*, because he did not account for the fact that Jermaine was moving. (Doc. 63 at 3; Doc. 69 at 6). However, "[t]he identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003). What the plaintiff challenges is Parker's failure to account for what the plaintiff believes to be a significant variable in the analysis, and "[n]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility." *Id*. at 1346 (internal quotes omitted).

The plaintiff next complains that the paper on which Parker relied "is not the industry standard." (Doc. 63 at 3-4). No evidence or argument accompanies this ipse dixit, which is thus entitled to no weight. At any rate, the defendant has presented evidence that the paper reviews over 50 peer-reviewed publications on

the issue and that it – and the treatise on which Parker also relied (which the plaintiff ignores) – articulate methods and principles generally accepted within the scientific and engineering communities. (Doc. 75-1 at 1-2).

Third, the plaintiff asserts that Parker's opinion that Jermaine fell before being struck is "contradicted" by the video from the vehicle camera and the statement of another officer on the scene. (Doc. 69 at 6). While a jury may decide that these materials support the plaintiff's version of events, they are not conclusive of the issue and do not preclude the defendant from offering expert testimony.

Finally, the plaintiff proposes that whether Jermaine tripped prior to the collision is "immaterial" to whether the defendant intentionally struck him. (Doc. 69 at 6). The defendant does not offer to explain this statement, and the Court will not fill in the gaps on his behalf.

**II. Ken Katsaris.**

**A. Pursuit.**

The plaintiff believes that Katsaris incorrectly opines that all pursuit of Jermaine had ended before he was struck by the defendant's vehicle. (Doc. 69 at 7-8). In fact, Katsaris opines only that the *vehicle* pursuit had ended. (Doc. 69-3 at 3; Doc. 75-1 at 28). The parties are in agreement that the pursuit continued after Jermaine exited the vehicle. (Doc. 69 at 8; Doc. 75 at 4).

**B. Adrenaline.**

The plaintiff denies that Katsaris is qualified to state there is no evidence that any adrenaline effect resulted in the striking of Jermaine. (Doc. 63 at 4; Doc. 69 at 8-9). Katsaris has been a certified instructor in pursuit driving since 1987, in connection with which he has received training on indicators that a driver is affected by adrenaline. (Doc. 75-1 at 28). Katsaris is thus qualified to testify as to

those indicators and whether, based on video and/or other evidence, they appear to have been present or absent.

### C. Intent.

The plaintiff argues: (1) that Katsaris is not qualified to opine there is no evidence of intentional force used by the defendant; and (2) that any such opinion would not assist the trier of fact. (Doc. 63 at 4; Doc. 69 at 9).

To the requirement of Rule 401 that evidence possess a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," Rule 702 adds that expert evidence must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004).

The defendant does not respond to the plaintiff's second argument. However, the defendant himself made the same argument in moving to preclude the plaintiff's expert from testifying that the defendant intended to strike Jermaine. (Doc. 65 at 9). The parties, and the Court, are thus in agreement that Katsaris cannot offer any opinion that there is no evidence the defendant intentionally struck Jermaine.[3]

### D. Policies and Procedures.

The plaintiff argues that Katsaris' opinion that the Satsuma Police Department's policies and procedures on pursuit and use of force comply with industry standards is "irrelevant and moot" because the City of Satsuma is no

---

[3] This ruling does not preclude Katsaris from offering opinions concerning the consistency of the defendant's conduct with an effort to establish a perimeter or the lack of time for the defendant to take avoidance maneuvers. (Doc. 75 at 4-5).

longer a defendant. (Doc. 63 at 4). The defendant offers no response. The Court concludes that the plaintiff is correct

## CONCLUSION

For the reasons set forth above, the plaintiff's motion to exclude the testimony of Jody Parker is **denied**; the motion to exclude the testimony of Ken Katsaris is **granted** to the extent it seeks to preclude Katsaris from offering any opinion that there is no evidence the defendant struck Jermaine intentionally or that the Satsuma Police Department's policies and procedures comply with generally accepted law enforcement principles and is otherwise **denied**.

DONE and ORDERED this 21st day of October, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE